# WILLIAM S. FORGEY et ux., Appellants, v. MACON TELEPHONE COMPANY.

### In Banc, February 9, 1922.

1. **DAMAGES: Telephone Company: Failure to Communicate Call to Fire Department.** A telephone company is not liable in damages for negligently failing to answer a call for the fire department, made by one of its subscribers, to notify the department that the subscriber's house is on fire. The cause and amount of damage in such instance are too remote and speculative. The fire department being under no legal duty to the subscriber to respond even if the telephone company had heard the subscriber's call and connected her with the department, and the services of the city being purely voluntary and gratuitous, no legal liability can be predicated against the telephone company for negligently failing to give its subscriber an opportunity to request from the city something the city was under no legal obligation to give and might refuse with impunity.

2. ———: ———: ———: **Proximate Cause.** If the failure to extinguish a fire in a subscriber's house is the direct and natural consequence of the negligent failure of the telephone company to answer the call of the subscriber and to communicate to the city fire department that the house is on fire, there may be a recovery of damages by the subscriber from the telephone company; but so many links in the chain of sequences are involved in doubt and speculation, that it cannot be said that a negligent failure to answer the subscriber's call was the proximate cause of the failure to extinguish the fire, where the city fire department was under no legal duty to respond to a call for fire, and it is pure speculation that it could have extinguished the fire had it responded.

3. ———: ———: ———: **Allegation that Fire Would Have Been Extinguished: Demurrer to Petition.** It is announced in the opinion, but said announcement is not approved by a majority of the judges, that allegations in a petition that had the defendant telephone company promptly answered the plaintiff subscriber's call and made connection with the fire department, the department would promptly have responded and would have extinguished the fire and saved plaintiff's house, are not allegations of fact and

are not susceptible of legal proof, because it is mere speculation whether the department would have responded promptly and if it had whether it would have saved the burning property, and therefore it was not error to sustain a demurrer to the petition.

Appeal from Macon Circuit Court.—*Hon. Vernon L. Drain*, Judge.

AFFIRMED.

*Shelton & Shelton* and *Otho F. Matthews* for appellants.

(1)   The defendant's demurrer to the complaint on the ground that it did not state a cause of action should not have been sustained.   Upon demurrer, conclusive and pointed allegations of fact in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff.  Hodges v. Ry. Co., 179 N. C. 566, 10 A. L. R. 1452.   The petition states that a fire was in progress covering a very small area of roof; that there was a contractual relation with the telephone company to connect it with the fire department of the city; that the fire department was ready, able and willing to respond and would have responded and would have put out the fire and had the necessary equipment so to do and could have been to the place within four minutes, and during the four minutes of time and for some time thereafter, it could have put out the fire, had the connection been made, together with the other necessary allegations stating a cause of action for damages.   Everyone of these allegations are admitted to be true by the demurrer, and they clearly state a cause of action, both from a standpoint of right, justice, law and public policy.
(2)   The complaint pleads a violation of the contractual relation between the plaintiffs and the defendant and on account of the violation of the contractual relation the damages occurred.   The damages are not remote.   They are directly traceable to the defendant's negligence.   Consequently, the petition states a cause of action.   Hodges

v. Ry. Co., 10 A. L. R. 1455, Annotation note, p. 1457; Glawson v. So. Bell Tel. & Tel. Co., 9 Ga. App. 450, 13 Ga. App. 520; Tel. Co. v. Morris & Co., 243 Fed. 481. In Lebanon Tel. Co. v. Lumber Co., 131 Ky. 718, 21 L. R. A. (N. S.) 115, 18 Ann. Cas. 1066, it was held that the separate agencies were wholly independent of each other, and none of them under the direction or subject to the control of the defendants, and that there must have been a series of presumptions indulged in. But that differs from the case at bar, because the case at bar pleads specific facts, and if those specific facts were proven and linked together there would have been no presumptions indulged in.

*George N. Davis* and *Ed. S. Jones* for respondent.

(1)   When a petition shows on its face that many of the elements which must enter into the result are conjectural and wholly uncertain, a demurrer does not admit a statement of the conclusions deduced from such uncertain circumstances, and a demurrer to a petition based upon such elements should be sustained. In this case, the damages sought to be recovered are too uncertain, speculative and remote. The facts necessary to correct defendant's alleged neglect with the damages sued for must not rest upon uncertain or indeterminate premises. Lebanon L. & L. Co. v. Lanham, Co., 131 Ky. 718; Volquardsen v. Iowa Tel. Co., 146 Iowa, 77; Ins. Co. v. Iowa Tel. Co., 172 Iowa, 597; Evans v. Cumberland Tel. & Tel. Co., 135 Ky., 66, 135 Am. St. 444, 121 S. W. 959; S. W. Tel. & Tel. Co. v. Thomas, 185 S. W. 396; Ruckner v. Guineshore Tel. Co., 158 Ky. 693, 182 S. W. 843; So. Bell Tel. & Tel. Co. v. Reynolds, 139 Ga. 385; So. Bell Tel. & Tel. Co. v. Glawson, 140 Ga. 507. The petition shows on its face that there is uncertainty as to the course of the damages pleaded as well as to the extent of the same. Therefore, the demurrer was properly sustained, for the reason that the cause of action as well as the damages, is too speculative and remote.

(2)   The proximate cause of the damage claimed by the plaintiff was the fire, with which the defendant had nothing to do.   Whether the fire department was ready to respond or would have responded; whether it had the necessary equipment so to do, are all matters of speculation and conjecture, and whether it would have put it out at all, it not being on the ground, not knowing the direction or velocity of the wind or any of the other numerous causes which control the progress of a fire is entirely too uncertain, remote and etherial to base a cause of action upon.   (3)   There is absolutely no privity of contract between the city and the fire department on the one hand and either the plaintiff or the defendant, on the other, so that as far as both the plaintiff and the defendant are concerned, the city and the fire department were under no obligations to respond to any fire call or to save the plaintiff's furniture from damage.   Even though the defendant was under contract to render the telephone service with the fire department, the fire department owed the plaintiff no legal duty to respond. when called.   Phoenix Ins. Co. v. Waterworks Co., 42 Mo. App. 118;  Howsmon v. Waterworks Co., 119 Mo. 304. A municipal corporation, so far as maintaining a city fire department is concerned, acts as a public corporation and a political subdivision of the State.   It maintains a fire department for the protection of its inhabitants, as a class, and not for the benefit of the individual and an action will not lie against it for negligent or wilful failure to answer a fire call; neither is any company rendering general service, such as water protection, telephone service, etc., liable for individual loss.   Hopt v. Elec. L. & W. Co., 114 S. W. 1099; Metz v. Same, 202 Mo. 324.   (4)   This case was based upon a contract for general telephone service and there was no undertaking on the part of the defendant to maintain or furnish a fire alarm system or service.  Such was not within the contemplation of the parties at the time the contract was made, and there was nothing about this or any other telephone call to notify the defendant that any unusual damage

might accrue, from fire or otherwise, for a delay in answering the same.   Under these circumstances, the courts are almost a unit in holding such damages to be too remote to warrant a recovery because not within the contemplation of the parties at the time the contract was made.   Kerns & Lorton v. W. Tel. Co., 174 Mo. App. 435.   Damages for breach of contract may be recovered when they are such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach, or as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract or as the probable result of a breach thereof.   W. U. Tel. Co. v. Edmonson, 91 Tex. 109, 10 A. L. H. 1452; S. W. Tel. & Tel. Co. v. Solomon, 54 Tex. Civil App. 306; Evans v. Cumberland Tel. & Tel. Co., 135 Ky. 66.

SMALL, C.—Suit for $10,000 damages for destruction of plaintiffs' property in the city of Macon, by fire. The lower court sustained a general demurrer to the petition.   Plaintiffs refusing to plead further, final judgment was rendered in favor of the defendant, from which plaintiffs appealed.   Appellants' statement of the case in their brief, which we adopt, is as follows:

Plaintiffs are husband and wife.   Defendant is a telephone corporation, operating a telephone system in the city of Macon, Missouri, and in said city rent out telephones to the different patrons for a monthly rental, and among the telephones so rented was one rented to the plaintiffs and located in their residence; that said telephone system gives a night-and-day service, and that the city of Macon is a city of the third class, operating a fire department, which is ready for both night and day service, at all times.   Said fire department is located at a central point in said city, and at all times stated in the petition the fire department was on the job and attending to the duties of its employment, and was ready, able and willing to immediately answer any fire alarm turned in to them at headquarters of the fire department in the city of Macon, Missouri.

The petition in this case pleads that the telephone company, at said time, was under contract with the city to furnish a reasonable and sufficient telephone service with the city fire department and to convey thereto, through its telephone lines and instruments, any information it might have pertaining to any fire or fires that might break out in the city; that the city fire department also had a telephone, and under the contract with the city was connected with all telephones in the city of Macon and all other patrons of said telephone company.

The petition pleads that the telephone of the plaintiffs and those in other residences in the city of Macon were for a valuable consideration, and said consideration was pay for said telephone and service, and that the company agreed, with all its subscribers, to give reasonable service, and that they were obligated to use reasonable care and diligence to furnish to the said plaintiffs and all other subscribers, reasonable and sufficient telephone service in the city of Macon, Missouri; that the contract with the city fire department was to the effect that the telephone company should furnish to its subscribers a good and efficient telephone connection with the fire department of the city of Macon; that located in the dwelling of the plaintiffs was much valuable furniture and household goods and the usual accoutrements located in a dwelling house; that about the 13th day of November, 1919, between the hours of 10:30 and 11 o'clock in the morning, it was discovered by one of the plaintiffs, Minnette S. Forgey, that a fire had ignited the roof of their said house, where she was living, and at said time the fire had made a very little progress; that the dwelling house was of frame material, two-stories high, with a shingle roof, which was in good condition and was of solid material, painted and plastered inside, and in good repair; that at the time she discovered the fire, she was talking with another subscriber of the telephone company in said city, and she told the subscriber with whom she was in conversation that her house was on fire and instructed her, as her agent, to

immediately notify the telephone company and to get into communication with the fire department and to notify them that her house was on fire; that the subscriber immediately rang off from the connection with the plaintiff and immediately attempted to again ring central, in order to get in connection and notify the fire department of said fire and rang repeatedly, for a period of some ten or fifteen minutes, and that said telephone company failed and refused to respond to the call and answer the signal or to make any connection whatever, and that the subscriber was compelled to and did leave her own telephone and go across the street to the telephone of the president of said company, where, upon ringing, connection was immediately given and said fire department notified of said fire.

The petition further recites that at the time that the agent of the plaintiff was ringing, trying to get central, the plaintiff, herself, repeatedly tried to get central and for a period of some ten or fifteen minutes, and that the central office negligently and carelessly failed and refused to give her any connection whatever or to answer her said signals at the telephone office, and she, being sick at the time, left her sick room clothed only in bedroom garments, and in desperation called for help in the neighborhood and ran to the house next door and found that she could not gain entrance on account of the door being locked, and ran to another house in the neighborhood where she obtained access to the telephone, and after repeated efforts succeeded in getting central to respond and turned in the alarm. Whereupon, central notified her that the alarm had just been turned in. She then asked to be connected with her husband's office and after repeated efforts on her part, was told by central that her husband failed to respond.

The petition further recites that when she ran from her house, calling for help, etc., several of her neighbors and acquaintances and friends tried to get in communication with the central office, but that the central office refused to respond; that at the time she attempted to get

in connection with the fire department and with the central office, the said men at the fire department were there, and ready, able and willing to respond to said fire-alarm, had it been turned in, and had been for a long period of time, and that had she been able to procure connection and been connected with the fire department, as she attempted to do, the fire department would have immediately responded to said call and could and would have been at her residence within a period of some three or four minutes time, and that they had all the material for promptly extinguishing the fire, and that the fire had gained such little headway at said time that it could have been and would have been promptly extinguished.

Plaintiffs had a policy of insurance for $4,000, and they had property in said dwelling worth some $16,000; but that the damage was more than $10,000, for which sum they sued.

I.   We think this case was properly ruled by the learned lower court.

It is clearly settled in this State that a water company which, by its franchise and under contract with the municipality, is required to furnish a sufficient and adequate supply of water to extinguish fires, where the city maintains a fire department whose duty it is to respond at all times to fire alarms, is not liable to the property owner for destruction of his property by fire, by reason of the failure of the water supply. [Metz v. Water Works and Electric Light Co., 202 Mo. 324; Howsmon v. Trenton Water Co., 119 Mo. 304; Insurance Co. v. Trenton Water Co., 42 Mo. App. 118; Houck v. Cape Girardeau Water and Electric Co., 114 S. W. 1099.]

Speculative Damages.

In the Howsmon Case, supra, there was also provision for a special tax, which the plaintiff had paid, to provide part of the consideration the water company was to receive, and an express provision in the contract with the city that "should said water company, from lack of water or any other cause, except providential or un-

avoidable accident, fail to furnish a reasonable or ade-
quate supply of water to extinguish any fire, then it shall
be liable for all damages occasioned by such fire or
neglect." But the court ruled that independently of
the above express provision, defendant was not liable,
because the city acted in its governmental capacity in es-
tablishing a fire department and in contracting with de-
fendant for water to extinguish fires, and therefore the
plaintiff would have had no cause of action against it
(citing Heller v. Sedalia, 53 Mo. 159) had said fire de-
partment refused or been negligent in putting out the fire
on plaintiff's premises, even though there had been an
adequate supply of water. The defendant was not liable
because of the express provision in the contract above
quoted, because it does not clearly appear that the benefit
therefrom was intended for the citizens in their individual
capacity, so that they could sue for damages for the
breach thereof, and the city was under no legal obliga-
tions to protect the individual citizen from damages by
fire, but was intended for the protection of the municipal-
ity; furthermore, the city had no authority to make a
contract with the water company to idemnify the plain-
tiff for loss of his property by fire resulting from the
neglect of its agents or servants to furnish an adequate
supply of water.

In Metz v. Water Company, 202 Mo. 324, which was
identical in facts with the Howsmon Case, except the con-
tract or franchise with the city contained no express pro-
vision relating to the water company's liability for dam-
ages in case of the failure of the water supply to put out
fires as agreed, the court contented itself by simply re-
ferring to the Howsmon Case and the learned and ex-
haustive opinion therein delivered by BRACE, J., as fore-
closing further discussion of the subject. In the case of
Houck v. Cape Girardeau Water Co., supra, the opinion
was delivered by GOODE, J., for the St. Louis Court of
Appeals, and followed the ruling of this court in the
Howsmon and Metz cases, supra, which the learned
judge's opinion also shows is supported by the weight of
authority in other states.

It would seem to follow, that if a water company cannot be held liable for damages for negligence in not supplying the city fire department with sufficient water to extinguish fires, whereby the citizen's house is destroyed by fire, a telephone company cannot be held liable for negligently failing to answer a call for the fire department by one of its subscribers, to notify said department of a fire at such house. The cause and amount of the damages in such instances are too remote and speculative. The city fire department was under no legal duty to the plaintiffs to respond at all, even if the defendant had heard the plaintiff's call and connected her with the fire department. The services of the city were purely voluntary and gratuitous, and no legal liability can be predicted against the defendant for negligence in failing to give plaintiffs an opportunity to request something from the city which the city was under no legal obligation to give and might refuse with impunity.

The direct question here involved has not been before this court or the courts of appeals of this State, but in other jurisdictions the precise question has been ruled against the plaintiffs in the following cases (and we find and are referred to none to the contrary): Lebanon L. & L. Telephone Co. v. Lanham Lumber Co., 131 Ky. 718; Volquardsen v. Iowa Telephone Co., 148 Iowa, 77; Providence Washington Insurance Co. v. Iowa Telephone Co., 172 Iowa, 597; Southwestern Tel. & Telephone Co. v. Thomas, 185 S. W. (Tex. Civ. App.) 396.

The ground upon which the above cases were ruled for the defendants was that both the cause and the amount of the damages were too remote and speculative, and it is well stated by the learned Supreme Court of Iowa, in Volquardsen v. Iowa Tel. Co., 148 Iowa, at page 82, as follows: "The fire was the primary cause of the loss. The defendant did not start it, or have aught to do with its origin. The charge against it is that the negligence intervened as the efficient cause in the omission to do that which would have resulted in the extinction of the fire. Of course, if the failure to put out the fire was

the direct and natural consequence of the unreasonable delay in making the connection, then there could be no doubt as to the defendant's liability. But several links in the chain of sequences are involved in doubt and speculation. The fire was burning, not only before plaintiff reached the receiver, but before he was awakened by his wife, who had heard the crackling of the flames.  .   .   .
At what time must they have been on the ground to have saved the property? No one can answer save from conjecture. All realize that in such emergencies time is precious, but who can say from the situation as presented in this case how many minutes meant the loss of the plaintiffs' property? Suppose the connection at the central office had been made promptly, would the fireman in charge of the fire station have responded promptly, and promptly have rung the fire bell? Would the members of the department have heard and promptly have repaired to the scene? Was the apparatus for extinguishing the fire in working order and the water supply accessible and sufficient? Would all of these intervening agencies have operated harmoniously and efficiently and with such promptness as to have put out the flames in time to have avoided a total loss? Manifestly these are matters of speculation, and yet all this must be assumed if the loss is to be traced to defendant's negligence. Each of these independent agencies necessarily must be linked together in a line of causation in order to connect it with the loss. None of them were under the direction or control of the telephone company. Moreover, how far the fire had spread at the time the firemen would have been likely to have reached the scene had the connection been promptly made is left by the evidence a matter of speculation merely. And then there are the weather conditions and the character of the material to be taken into account. After the experiences of ages, fighting fire, even with modern machinery and apparatus, is precarious business, and uncertain in its results. Had everything worked out as calculated, after the fire was over, probably some of the building and machinery might

have been saved. But the basis for a legal inference of this kind was not furnished by the evidence. The negligence of the telephone company may be ascertained, but that falls short of connecting it with the loss, which is only possible through agencies entirely independent. If it, as the dominating force, acted through the intervening agencies, as mere instruments or vehicles in a natural line of causation, to the loss, there would be ground for saying defendant was liable. But the intervening agencies were independent, and what might have happened pure matter of speculation.''

In Southern Bell Tel. Co. v. Reynolds, 139 Ga. 385, the Supreme Court held the telephone company not liable for negligent failure to answer a call of the plaintiff for a physician, with whom he had made arrangements to attend his wife in child-birth, by reason of which the wife suffered unnecessary injury to her health. In that case the court refused to follow and in effect overruled the case of Glawson v. Tel. Co., 9 Ga. App. 450, relied on by the appellant, which made a contrary ruling. But in the Glawson Case the plaintiff had a contract with the physician to attend his wife and he was under a legal obligation to do so and would have been liable for negligently failing to attend her, whereas in the case before us, as we have seen, neither the city nor the members of its fire department were under any legal obligation to answer the plaintiffs' call. Besides, the Glawson Case as decided by said Court of Appeals, on being certified to the Supreme Court of Georgia (see 140 Ga. 507), LUMPKIN, J., delivering the opinion, was again disapproved and held to be in conflict with the prior decisions of that court and with the above cited cases from Kentucky, Iowa and Texas.

Hodges v. Railroad, 179 N. C. 566, is cited by appellant. In that case the petition alleged that defendant wilfully, knowingly and unlawfully cut certain telephone wires so that plaintiff could not communicate with a physician with whom he had made arrangements to attend his wife in child-birth, by reason of which his wife suf-

Forgey v. Macon Telephone Co.

fered unnecessary injuries. The court held a cause of action was stated, but its ruling was based upon the ground that the statute of that State made it a misdemeanor, punishable by fine and imprisonment, to wilfully cut a telephone wire.

II. But it is strenuously argued by the learned counsel of the plaintiffs that in their petition they allege as a fact that had the defendant promptly answered the plaintiffs' telephone call and made connection with the fire department, the fire department would have promptly responded and would have extinguished the fire and saved the plaintiffs' property; and that it was for the jury to say whether plaintiff could prove such allegations. But we rule such allegations are not allegations of fact and were not susceptible of legal proof because no one could tell whether the fire department would have thus responded and thus saved the plaintiffs' property. Said allegations were mere inferences—or prophecies—as to what the fire department would have done. There is no legal presumption that it would have done so because the fire department was under no legal obligation in the premises to the plaintiffs. We must rule this contention against the appellants.

*Allegations of Fact: Demurrer.*

Without extending this opinion further we conclude that the doctrine so firmly established by this court in the water company cases heretofore cited, inevitably leads to the same result in this case, as was reached in the Kentucky, Iowa and Texas cases, above referred to, and hence we must affirm the judgment of the lower court. Judgment affirmed accordingly. *Ragland, C.*, concurs; *Brown, C.*, not sitting.

PER CURIAM:—The foregoing opinion of SMALL, C., is adopted as the opinion of the court. *James T. Blair, C. J.*, concurs in paragraph 1 and the result; *David E. Blair, Elder* and *Walker, JJ.*, concur; *Graves* and *Higbee, JJ.*, dissent; *Woodson, J.*, absent.