WESTERN UNION TELEGRAPH COMPANY *v.* STANDRIDGE.

4-7454                                                     183 S. W. 2d 602

Opinion delivered November 27, 1944.

*Francis R. Stark, Homer Brockett, Rose, Lough-borough, Dobyns & House,* for appellant.

*Bob Bailey* and *Joe D. Shepherd,* for appellee.

GRIFFIN SMITH, Chief Justice. The question is, Did Circuit Court err in rendering judgment on a jury's ver-

dict awarding $400 in damages to one for whose benefit a telegram was sent from Arkansas to Indiana? The message, as written, would have informed Appellee Elizabeth K. Standridge that her sister-in-law, Ada, died Wednesday morning, April 7, and that the body would be buried Friday. As received, the wording was, "Idad died," etc.

Believing that her father had died, Mrs. Standridge left by train for her parents' home in Russellville, accompanied by her husband and their three small children. The Standridges sued jointly. Allegations were that great mental and physical distress were suffered; that the husband lost six days from his work in a defense plant, amounting to $90, and that railroad fare and meals cost $109.14. The sum asked was $2,999.

From a directed verdict against J. R. Standridge he has appealed. Western Union appeals from the judgment in favor of Mrs. Standridge because instructions permitted the jury to consider mental anguish as an element of recovery.

A directed verdict against appellee's husband was proper. One whose name is not mentioned in a telegram, and whose interest in the subject matter is not brought to the carrier's attention in a way that would cause a prudent person to believe that injury might result from the carrier's mistake, has no cause of action. *Western Union Telegraph Company* v. *Swearengen,* 94 Ark. 336, 126 S. W. 1071. See, also, *Primrose* v. *Western Union,* 154 U. S. 1, 14 S. Ct. 1098, 38 L. Ed. 883. Gist of the Primrose case is that the measure of responsibility depends upon knowledge of the special circumstances to be affected by failure of the carrier to properly transmit. The rule was affirmed by this Court in *Western Union Telegraph Co.* v. *Hogue,* 79 Ark. 33, 94 S. W. 924; *Chicago, R. I. & P. Ry. Co.* v. *Miles,* 92 Ark. 573, 123 S. W. 775, 124 S. W. 1043; *Southern Telephone Company* v. *King,* 103 Ark. 160, 146 S. W. 489, 39 L. R. A., N. S., 402, Ann. Cas. 1917B, 780, and cases there cited.

Some of the instructions in the case at bar clearly informed the jury that mental anguish and physical distress should be considered. Such mental anguish, said the Court, ". . . must be real and with cause, and not the result of a too sensitive mind or morbid imagination."

It is true that in Instruction No. 7 the law was declared to be that mental anguish and suffering would not of themselves warrant a verdict, and ". . . unless you further find that plaintiff in addition suffered physical distress . . . in conjunction therewith . . . your verdict should be for the defendant."

If construction of this language is that recovery be denied unless the distress followed physical injury, still the difficulty is that grief and disappointment were the proximate causes and pain peculiar to Mrs. Standridge[1] was the result. A mild shock, such as the use of profanity or a threatening attitude assumed toward a third person might cause a sensitive woman to suffer mental anguish followed by headache or kindred ill, whereas another, of different fiber, would be unaffected by the transaction. The want of a basis for measuring mental anguish has caused lawmakers and courts to deal with it at arm's length when considering elements of recovery *ex contractu* or *ex delicto,* although in some jurisdictions compensation is allowed, irrespective of physical pain or injury as the terms are ordinarily understood. By Act of March 7, 1903, Pope's Digest, § 14258,[2] it was sought to fix liability on all telegraph companies doing business in this State, "for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss." The statute applied where negligence in receiving, transmitting, and delivering messages was shown.

But in May, 1914, the United States Supreme Court (opinion by Mr. Justice HOLMES) struck down a South Carolina statute similar to ours (Civil Code of that State,

[1] Pains in head and back, requiring application of hot pads for a period of two weeks, were testified to by Mrs. Standridge.

[2] This section of the Digest erroneously shows the Act to have been passed in 1913.

1902, § 2223) to prevent what the Court thought would be extraterritorial effect of a domestic law. The judgment considered gave compensation because of Western Union's negligent nondelivery of an interstate death message.[3]

In July of the year the Holmes opinion was adopted, the telegraph company appealed to this Court from a judgment in favor of G. D. Compton, based upon the Act of 1903. *Western Union Telegraph Co.* v. *Compton,* 114 Ark. 193, 169 S. W. 946. Following affirmance, and before the judgment became final, the Supreme Court of the United States decided against Brown in the South Carolina case. On rehearing here (opinion by Chief Justice McCulloch) the former action was set aside and the law as pronounced in the Brown case was applied.

Substance of the Brown decision is that enforcement of a statute creating rights sought to be conferred by the Mental Anguish Act would impose a burden on interstate commerce. The Holmes opinion also excludes any thought that interference with commerce among the States was not a ground upon which the decision rests. This was stated by Judge McCulloch on rehearing in the Compton case.

In seeking to serve society as a whole, a law may sometimes be unjust to an individual. That is true here. It would seem that any casual consideration of the message delivered to Mrs. Standridge should have suggested an inquiry. The word "Idad" of itself is meaningless. True, there might be the presumption that it was a term of endearment applied to father or grandfather, brought forward from childhood days; but the unusual combination of letters should have warned any responsible agent of appellant that probably the message had been garbled. That the recipient was distressed is too obvious to require more than a statement of circumstances and relationships. Reason is not served nor logic dignified by the abstract assertion that Law prevents redress for the injured party; and yet, when the decisions are examined, there

---

[3] *Western Union Telegraph Co.* v. *Brown,* 234 U. S. 542, 34 S. Ct. 955, 58 L. Ed. 1457.

is no satisfactory answer unless it be that differences in sensibilities and susceptibility to shock, the wide range of capacity for affection and the lack of uniformity in reaction, preclude reasonable minds from measuring, for purposes of compensation, the damages that flow from a particular transaction. So again it must be said, "this is the law" as to interstate messages.

The judgment against J. R. Standridge is affirmed. The award to Mrs. Standridge is modified to include only the actual expenses of $37.20. It is affirmed for this amount.